# EXHIBIT A

# EXHIBIT A-1

Filed
09 August 19 P12:33
Amalia Rodriguez-Mendoza
District Clerk
Travis District

D-1-GN-09-002700
CAUSE NO. _____

| | | |
|---|---|---|
| ARMSTRONG McCALL, LP, | § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | TRAVIS COUNTY, T E X A S |
| | § | |
| CADEAU EXPRESS, INC., RAMON DESAGE A/K/A ABI-RASHED DESAGE, AND RONALD BAROODY A/K/A RON SMITH, | § § § § § § | 98TH |
| Defendants. | § § | ____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Armstrong McCall, L.P. ("Plaintiff" or "Armstrong McCall") and complains of Cadeau Express, Inc., Ramon DeSage a/k/a Abi-Rashed DeSage, and Ronald Baroody a/k/a Ron Smith (collectively "Defendants"), and for cause of action shows the Court as follows:

### DISCOVERY PLAN

1.    Discovery in this case is intended to be conducted under discovery control plan level 2 (T.R.C.P. 190.3).

### PARTIES

2.    Plaintiff Armstrong McCall, L.P. is a Texas limited partnership, with its principal place of business located at 6505 Burleson Road, Austin, Texas 78760.

3.    Defendant Cadeau Express, Inc. ("Cadeau Express") is a Nevada corporation, with its principal place of business located at 3494 E Sunset Road Las Vegas, Nevada 89120.

4.    Defendant Ramon DeSage a/k/a Abi-Rashed DeSage ("DeSage") is an individual residing in the State of Nevada, Clark County. DeSage is also the President and Chief Executive

Officer of Defendant Cadeau Express.

5. Defendant Ronald Baroody a/k/a Ron Smith ("Baroody") is an individual residing in the State of Nevada, Clark County. Mr. Baroody/Smith is also the Chief Operating officer of Cadeau Express.

6. In doing the wrongful acts alleged herein, Defendants Baroody and DeSage acted in their individual capacity, as well as agents, vice principals, and/or employees of Cadeau Express.

7. Plaintiff is ignorant of the true names of other individuals and/or entities who participated in or conspired in the wrongful conduct complained of herein. Plaintiff will amend this Petition to add such persons and entities as Defendants herein once their identities have been ascertained.

## JURISDICTION AND VENUE

8. Personal jurisdiction is proper as to each of the Defendants because their wrongful acts, as set forth more fully below, took place in, were directed toward and/or caused harm in the State of Texas.

9. Venue is proper in Travis County pursuant to Texas Civil Practice and Remedies Code Section 15.002 because Travis County is the county where all or a substantial part of the events giving rise to the claims occurred.

## FACTUAL SUMMARY

10. Armstrong McCall is a distribution company founded in 1939, which primarily distributes professional beauty products through a franchise system. Armstrong McCall distributes the products of a number of manufacturers, including products of such well-known brands as Matrix, Paul Mitchell, TIGI, and American Crew, among others.

11. For over twenty-eight years, Plaintiff Armstrong McCall has been a loyal and successful distributor of "Matrix" hair care products. During most of these years, Armstrong McCall enjoyed a close and cooperative relationship with Matrix Essentials, Inc. (the original owner of the Matrix brand) and its successors. Armstrong McCall has made substantial investments to promote the Matrix brand—at times foregoing other business opportunities due to its loyalty to Matrix—and deserves a significant amount of the credit for helping build Matrix into one of the most popular lines of professional hair care products in the United States. The Matrix brand is now owned by L'Oreal USA S/D, Inc. ("L'Oreal").

12. The beauty products distributed by Armstrong McCall include "professional" beauty products, which are intended to be sold to and through licensed cosmetologists and other beauty professionals. In fact, some manufacturers require Armstrong McCall to agree to distribute their products *only* through certain approved professional channels.

13. Cadeau Express is a wholesaler in the business of supplying gifts and other amenities to the casino hotel industry. In September 2005, Armstrong McCall entered into a distribution agreement with Cadeau Express (the "Cadeau Agreement"). Armstrong McCall entered into this agreement because certain of the manufacturers it represents were interested in distributing their products through casino hotels, as well as through traditional professional channels. L'Oreal was one of the manufacturers who agreed to allow Armstrong McCall to sell certain products to Cadeau Express—specifically including Matrix products.

14. Among other things, the Cadeau Agreement limited the buyers to whom Cadeau Express could resell products sold to it by Armstrong McCall in order to prevent those products from ending up on the "gray market." For example, the Cadeau Agreement provided that

Cadeau Express "shall only sell Products to the Hospitality Venues and then not for re-sale but only for services they provide to their patrons for personal use."

15. On its web site, Cadeau Express boasts that "[w]e operate with integrity and maintain a management philosophy that is action driven and based on the highest level of business ethics. Our years of creativity, combined with trust and accountability, has given us the highest standing in the market place." In time, Armstrong McCall would learn that nothing could be further from the truth.

16. Each of the Defendants knew that Armstrong McCall did not want products sold to Cadeau Express to be "diverted" to the gray market, and each of the Defendants knew such activity was prohibited by the Cadeau Agreement. Further, each of the Defendants knew that if products found on the gray market were traced to sales made by Armstrong McCall to Cadeau Express, such improper diversion activity on the part of Cadeau Express could disrupt, injure, or even jeopardize Armstrong McCall's contracts and relationships with manufacturers, which are essential to Armstrong McCall's business.

17. Beginning in or around early 2009, Defendants began a campaign to interfere with Armstrong McCall's relationship with L'Oreal (and perhaps other manufacturers) and to ruin its reputation. Contrary to its gallant claim of being a business of "integrity" and of the "highest level of business ethics," Cadeau Express itself now claims that it is a diverter and that it resold product sold to it by Armstrong McCall into the gray market. This is in violation of the clear limits on resale of products imposed by the Cadeau Agreement.

18. More astoundingly, Cadeau Express claims, and has represented to one of Armstrong McCall's most important customers, L'Oreal, not only that Armstrong McCall knew Cadeau Express intended to sell products to unauthorized buyers, but that Cadeau Express paid

certain Armstrong McCall employees millions of dollars in illegal kick-backs or bribes (and provided them with other gifts or consideration) in exchange for facilitating sales of product which Cadeau Express intended to sell into the gray market.

19.     Armstrong McCall is informed and believes that the information provided by Cadeau Express to L'Oreal concerning the alleged knowledge of Armstrong McCall employees, as well as their alleged participation in a kick-back scheme or acceptance of bribes, was false. Armstrong McCall knows that Defendant Baroody made such statements to L'Oreal. Armstrong McCall is informed and believes that Defendant DeSage made similar statements to L'Oreal, and, at a minimum, was aware of, approved, and authorized the statements made by Defendant Baroody to L'Oreal. Among other things, L'Oreal has represented to Armstrong McCall that Defendant DeSage knew of and indeed authorized the statements made by Baroody. In fact, Armstrong McCall is informed and believes that Defendant Baroody would never have made such statements except on the instruction and at the direction of Defendant DeSage.

20.     Whether Defendants' statements are true or false, Defendants Cadeau Express, Ramon DeSage, and Ronald Baroody have engaged in wrongful and tortious conduct that has resulted in substantial damage to Armstrong McCall's reputation, business, and contractual and other business relationships. If, as Armstrong McCall believes, the statements made by Defendants to L'Oreal (and perhaps others) prove to be false, Defendants are liable for the harm caused by their defamatory statements, including the harm caused to Armstrong McCall's contractual relationship with L'Oreal. If, on the other hand, Defendants actually engaged in the illegal kick-back scheme as they claim, Defendants are liable to Armstrong McCall for the harm caused by corrupting its employees, including any harm caused to Armstrong McCall's contractual relationship with L'Oreal.

21.   Defendants Cadeau Express, DeSage, and Baroody each knew that providing the false information described above to L'Oreal would disrupt the contractual relationship between L'Oreal and Armstrong McCall and would cause L'Oreal to seek to terminate the contract. In fact, following Defendants' false and disparaging statements, L'Oreal demanded that Armstrong McCall "resign" the Matrix brand and has sued Armstrong McCall based on these false allegations.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Defamation - Libel and Slander)

22.   Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 of this Petition as though set forth in full at this point.

23.   One or more of the Defendants made false and disparaging statements to L'Oreal and perhaps to others as described, in part, above.

24.   Defendants made or approved of the making of these false statements with intent, and with the knowledge that doing so would cause substantial harm to Armstrong McCall.

25.   Further, the statements made by Defendants, or at their direction, were defamatory *per se* for various reasons, including that such statements suggest the involvement of Armstrong McCall in potential criminal activity.

26.   Armstrong McCall has been damaged as a proximate result of the defamatory statements made or authorized by the Defendants in an amount according to proof at trial, but in excess of the jurisdictional minimum of this court.

## SECOND CAUSE OF ACTION
### (Business Disparagement)

27. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 26 of this Petition as though set forth in full at this point.

28. One or more of the Defendants made false and disparaging statements to L'Oreal and perhaps to others as described, in part, above.

29. Defendants made or approved of the making of these false statements with intent, and with the knowledge that doing so would cause substantial harm to Armstrong McCall.

30. Further, the statements made by Defendants, or at their direction, were defamatory *per se* for various reasons, including that such statements suggest the involvement of Armstrong McCall in potential criminal activity.

31. Armstrong McCall has been damaged as a proximate result of the defamatory statements made or authorized by the Defendants in an amount according to proof at trial, but in excess of the jurisdictional minimum of this court. Among other things, Armstrong McCall has expended significant sums investigating the reckless allegations made by Defendants and, ultimately, rebutting the same.

## THIRD CAUSE OF ACTION
### (Tortious Interference with Contract)

32. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 31 of this Petition as though set forth in full at this point.

33. Plaintiff has a valid and existing contract with L'Oreal giving Armstrong McCall the exclusive right to distribute Matrix products in certain parts of the United States.

34. Defendants were well aware of this contract, and knew that providing false information to L'Oreal concerning Armstrong McCall's alleged involvement in gray market

sales and the alleged involvement of its employees in accepting kick-backs related to such sales would disrupt and potentially result in L'Oreal's attempted termination of the contract.

35. In fact, Defendants intentionally and willfully interfered with the contract between Armstrong McCall and L'Oreal.

36. Defendants' intentional interference with the contract between L'Oreal and Armstrong McCall proximately caused, and continues to cause, Armstrong McCall to suffer substantial damages in an amount according to proof at trial but in excess of the minimum jurisdiction of this Court.

### FOURTH CAUSE OF ACTION
### (Conspiracy)

37. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 36 of this Petition as though set forth in full at this point.

38. Each Defendant was a member of a combination of two or more persons.

39. The object of the Defendants' combination was to accomplish an unlawful purpose and/or a lawful purpose by unlawful means as described above. Specifically, the object of the Defendants' conspiracy was to defame Armstrong McCall, ruin its reputation, and interfere with its existing and potential business relationships.

40. The Defendants had a meeting of the minds on the object and/or the course of action.

41. At least one of the Defendants committed and unlawful, overt act to further the object and/or course of action.

42. The Defendants' conspiracy caused, and continues to cause, Armstrong McCall to suffer substantial damages in an amount according to proof at trial but in excess of the minimum jurisdiction of this Court.

## ALTERNATIVE CAUSES OF ACTION

43. As set forth above, Armstrong McCall is informed and believes that the allegations and claims leveled by Defendants to L'Oreal, and perhaps others, are false. However, in the unlikely event those allegations prove to be true, Armstrong McCall hereby asserts the following alternative causes of action in the alternative.

### FIFTH CAUSE OF ACTION
### (Breach of Contract – Against Cadeau Express, Inc.)

44. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 of this Petition as though set forth in full at this point.

45. Plaintiff and Defendant Cadeau Express had a valid and existing contract relating to the sale of certain beauty products.

46. Among other things, the agreement provided that Cadeau Express "shall only sell Products to the Hospitality Venues and then not for re-sale but only for services they provide to their patrons for personal use."

47. Cadeau Express claims to have breached the agreement with Armstrong McCall by selling the beauty products to unauthorized buyers.

48. If that is true, Armstrong McCall has been damaged by such breach in an amount according to proof of trial.

### SIXTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty)

49. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 and paragraphs 45 through 48 of this Petition as though set forth in full at this point.

50. In the event that the Defendants' allegations are true, Armstrong McCall's employees have breached their fiduciary duties owed to Armstrong McCall.

51. Defendants had knowledge that Armstrong McCall's employees conduct constituted breaches of their fiduciary duties.

52. Defendants had the intent to assist Armstrong McCall's employees in committing the breaches of their fiduciary duties.

53. Defendants gave Armstrong McCall's employees assistance and/or encouragement.

54. The Defendants' assistance and/or encouragement was a substantial factor in causing the breaches of fiduciary duties.

### SEVENTH CAUSE OF ACTION
### (Tortious Interference)

55. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 and paragraphs 45 through 54 of this Petition as though set forth in full at this point.

56. Armstrong McCall imposed certain policies and obligations on its employees, which employees were expected to follow.

57. Defendants willfully and intentionally interfered with these policies and obligations by inducing Armstrong McCall's employees to breach their fiduciary or other duties owned to Armstrong McCall, and to violate the terms of these policies and obligations.

58. The Defendants' interference proximately caused Armstrong McCall's injury.

59. Defendants' intentional interference caused Armstrong McCall to suffer substantial damages in an amount according to proof at trial but in excess of the minimum jurisdiction of this Court.

### EIGHTH CAUSE OF ACTION
### (Conspiracy)

60. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 and paragraphs 45 through 59 of this Petition as though set forth in full at this point.

61. Each Defendant was a member of a combination of two or more persons.

62. The object of the Defendants' combination was to accomplish an unlawful purpose and/or a lawful purpose by unlawful means. Specifically, the Defendants sought to induce Armstrong McCall's employees to breach their fiduciary or other duties by offering them millions of dollars in bribes and kick-backs. Defendants then sought to profit from their conspiracy by diverting Armstrong McCall product to the gray market.

63. The Defendants had a meeting of the minds on the object and/or the course of action.

64. At least one of the Defendants committed and unlawful, overt act to further the object and/or course of action, including, but not limited to, sending millions of dollars in bribes and kick-backs to Armstrong McCall's employees.

65. The Defendants' conspiracy caused, and continues to cause, Armstrong McCall to suffer substantial damages in an amount according to proof at trial but in excess of the minimum jurisdiction of this Court.

### NINTH CAUSE OF ACTION
### (Racketeer-Influenced and Corrupt Organization "RICO" 18 U.S.C. § 1962(c) Against Defendants Cadeau and Baroody)

66. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 and paragraphs 45 through 65 of this Petition as though set forth in full at this point.

67. Each of Defendants DeSage and Baroody (collectively, "RICO Defendants") is a "person" within the meaning of 18 U.S.C. § 1961(3).

68. The RICO Defendants are employed by or associated with at least one "enterprise" as that term is defined in 18 U.S.C. § 1961(4). Specifically, the Defendants operate by and through Defendant Cadeau Express (the "RICO Enterprise"), and perhaps other related entities. The RICO Enterprise has an existence separate and apart from the pattern of racketeering activity, is an ongoing organization, and its members function as a continuing unit as shown by a hierarchal structure and consensual decision making.

69. The RICO Enterprise is engaged in and affects interstate commerce.

70. Defendants knowingly conducted and participated in the conduct of the RICO Enterprise's affairs through a pattern of racketeering activity. The RICO Enterprise benefitted from the commission of the racketeering activity.

71. This pattern of racketeering activity is constituted by the RICO Defendants' claimed participation in a bribery scheme targeted at Armstrong McCall for the purpose of obtaining products for the grey market. Such actions, if true, constitute Fraud by Commercial Bribery, a state felony under Texas Penal Code Section 32.43. Such actions also constitute the RICO Defendants' use of the wires for the purpose of furthering or executing a scheme or artifice to defraud the Plaintiff by depriving the Plaintiff of the intangible right of honest services. The pattern of racketeering activity began at least as early as July 2005 and continued through at least March 2007.

72. The RICO Defendants' use of the wires in furtherance of their scheme or artifice to defraud occurred on various occasions.

73. Such wire transactions were part of a pattern of racketeering activity engaged in by the RICO Defendants for the purpose of furthering their scheme to defraud Plaintiff. Furthermore, the acts constitute and threaten long-term criminal activity.

74. The RICO Defendant's actions proximately caused injury to Plaintiff's business and property.

### TENTH CAUSE OF ACTION
**(RICO Conspiracy 18 U.S.C. § 1962(d) Against Defendants Cadeau and Baroody)**

75. Plaintiff Armstrong McCall hereby incorporates by reference paragraphs 1 through 21 and paragraphs 45 through 74 of this Petition as though set forth in full at this point.

76. Each of the RICO Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

77. The RICO Defendants conspired to violate 18 U.S.C. § 1962(c).

78. The conspiracy commenced at least as early as July 2005, and continued at least until March 2007.

79. The Defendants claim the object of the conspiracy was to engage in Fraud by Commercial Bribery and/or to deprive the Plaintiff of the intangible right of honest services by paying bribes and kickbacks to the Plaintiff's employees.

80. The RICO Defendants have taken several overt acts in furtherance of the conspiracy. Specifically, the Defendants have paid bribes and have transmitted or caused to be transmitted money wires to further their scheme.

81. The RICO Defendants claim they agreed to commit, and ultimately did commit, predicate acts with knowledge that the predicate acts were part of a pattern of racketeering activity.

82. Such transactions were part of a pattern of racketeering activity engaged in by the RICO Defendants for the purpose of furthering their scheme to defraud Plaintiff. Furthermore, the acts constitute and threaten long-term criminal activity.

83. The RICO Defendant's actions proximately caused injury to Plaintiff's business and property.

84. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover threefold the damages sustained, plus costs (including attorney's fees) from the RICO Defendants.

## SPECIAL DAMAGES

### EXEMPLARY DAMAGES

85. Based upon the outrageous, malicious, and morally culpably nature of the Defendants' conduct, and for the purpose of deterring such conduct in the future, Armstrong McCall respectfully requests that this Court award exemplary damages against all Defendants.

86. Exemplary damages are proper in this case, and are recoverable because Defendants have defamed Armstrong McCall, and, alternatively, have aided and abetted and conspired to induce Armstrong McCall employees to breach their fiduciary duties to Armstrong McCall and have tortiously interfered with Armstrong McCall's contracts with L'Oreal and its employees. Furthermore, the Defendants' conduct was undertaken with actual malice.

## JURY DEMAND

87. Armstrong McCall asserts its right to a trial by jury, under Texas Constitution article 1, section 15, and timely makes this demand for a jury trial at least 30 days before the date this matter is set for trial, in accordance with Texas Rule of Civil Procedure 216.

88. Armstrong McCall tenders the appropriate fee, as required by Texas Rule of Civil Procedure 216(b) and Texas Government Code section 51.604.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants will be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendants for a sum within the jurisdictional limits of the Court, together with prejudgment and post-judgment interest as provided by law, costs of court, and such other and further relief to which Plaintiff is justly entitled.

DATE: August 19, 2009.

Respectfully Submitted,

John R. Crews
State Bar No. 00785529
john.crews@alston.com
Joshua P. Martin
State Bar No. 24037030
josh.martin@alston.com
Charles S. Cantu
State Bar No. 24044911
charles.cantu@alston.com
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 3601
Dallas, Texas 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899

**ATTORNEYS FOR PLAINTIFF ARMSTRONG McCALL, L.P.**